DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KENYA RICHARDSON,**
Appellant,

v.

**SHAREKA RICHARDSON** a/k/a **SHAREKA SCOTT,**
Appellee.

No. 4D2025-2725

[July 1, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Steven Joel Levin, Judge; L.T. Case No. 562022CP001052AXXXHC.

Kenya Richardson, Fort Pierce, pro se.

Juan Andre Pyfrom of The Law Office of Juan A. Pyfrom, West Palm Beach, for appellee.

GROSS, J.

This is an appeal from a probate proceeding where the trial court determined that a man who died intestate had three heirs. We reverse because the court applied an incorrect legal standard for the right of a person born out of wedlock to inherit from a father who has died intestate.

### Background Facts

Larry Darnell Richardson, Sr. (the "decedent") died intestate in April 2022. Shortly after his death, appellee Shareka Scott petitioned for summary administration of the estate, alleging that she was his daughter.

Appellant Kenya Richardson ("Kenya") objected to Scott's petition and moved to dismiss it. Kenya alleged that she was a biological child of the decedent and that Scott was not. Kenya filed a competing petition for summary administration, which she later amended.

During the proceedings, the trial court entered an order setting aside the decedent's conveyance of real property on the ground that the

applicable deed was "forged and fraudulent." That ruling involved a March 2022 quitclaim deed, by which the decedent conveyed property to Scott and himself as joint tenants with the right of survivorship.[1]

Scott later filed a petition to determine beneficiaries, alleging that she, Kenya, and Larry Richardson, Jr., were the decedent's children and the heirs at law.

Kenya answered the petition to determine beneficiaries and raised several defenses, including that Scott could not establish paternity, that the statute of limitations for any paternity action had expired, and that the decedent's signature on Scott's birth certificate was forged. Attached to the answer was a document examiner's report opining that someone had forged the decedent's signature on Scott's birth certificate.

### *Evidentiary Hearing on Petition to Determine Beneficiaries*

At an evidentiary hearing, both sides acknowledged that Scott's mother had never been married to the decedent.

One of Kenya's legal arguments was that Scott's birth certificate was fraudulent. The trial court declined to hear that argument regarding the birth certificate, commenting that the court had no "say" in a "birth certificate fraud that may have happened 40 years ago." For the purpose of the hearing, the court "assume[d] the birth certificate [was] right."

Scott's position at the hearing was that paternity was established when the decedent signed her birth certificate in the hospital. Scott's attorney argued that any challenge to the validity of the birth certificate had to have occurred within 60 days of Scott's birth.

Kenya's lawyer argued Scott's claim was barred by the four-year statute of limitations under the pre-2009 version of section 95.11(3)(a), Florida Statutes, because Scott was born out of wedlock and did not seek a determination of paternity within four years of reaching the age of

---

[1] Two other motions filed during the proceedings were never ruled upon, so they are not impacted by this appeal. The decedent's son, Larry Richardson, Jr., moved to disqualify Scott from the probate proceedings because she had attempted to disinherit the heirs by fraudulently executing the quitclaim deed that would have given her sole ownership of the property. Kenya moved for DNA testing to determine Scott's biological father, which Scott opposed. The record contains no indication that either motion was set for hearing or otherwise ruled upon.

majority.  The attorney relied upon *Rose v. Sonson*, 208 So. 3d 136 (Fla. 3d DCA 2016), a decision holding that (1) a putative son's petition to determine beneficiaries was barred by the four-year statute of limitations on actions to establish paternity, and (2) a 2009 statutory amendment eliminating the statute of limitations for paternity determinations in probate proceedings relating to intestate succession did not apply retroactively.

Kenya's counsel also argued that none of the three methods for qualifying as an heir under section 732.108(2), Florida Statutes—namely, that (1) the natural parents participated in a marriage ceremony, (2) paternity was established by court adjudication, or (3) the father acknowledged paternity in writing—were met.  The lawyer conceded that the birth certificate listed Larry Richardson, Sr., as the father and contained his purported signature.  However, the lawyer contended that the birth certificate did not automatically establish paternity because the required affidavit had not been submitted.  The lawyer also noted that there was "a forgery issue," explaining that "an expert with a handwriting signature analysis . . . was retained to analyze the signature."

During the hearing, Scott testified that her father was the decedent.

The records custodian for the St. Lucie County School District testified that the decedent submitted Scott's birth certificate and registered her for school on August 27, 1990.

The birth certificate in the records custodian's possession was admitted into evidence with no objection from Kenya's counsel.  The birth certificate indicated that Scott was born in Florida as "Shareka Darshell Richardson" in January 1985.  The birth certificate listed "Larry Darnell Richardson, Sr." as Scott's father, and contained the signature of "Larry Richardson Sr."  The birth certificate stated that the father's social security number was "unobtainable."

### *The Trial Court's Ruling*

At the conclusion of the hearing, the trial court determined that Scott, Kenya, and Larry, Jr., were all heirs of the estate.

The trial court distinguished the present case from *Rose* on the basis that *Rose* did not involve a birth certificate listing the purported father. Unlike *Rose*, the court noted, the present case involves a birth certificate containing the decedent's name and signature, which had been accepted as the birth certificate when the decedent registered Scott for school in

August 1990.  The court remarked that "the name on the birth certificate controls the father in a dependency case, which I did for many, many years."  The court was also concerned with the ramifications of "[t]aking someone who's 40 years old and saying you don't have a father anymore."

Following the evidentiary hearing, the trial court entered an order determining beneficiaries.  The court found that the decedent was survived by three children, who were his sole heirs at law: (1) Shareka D. Scott; (2) Larry Richardson, Jr.; and (3) Kenya Richardson.  The court further found that "there was insufficient evidence to invalidate the birth certificate of Shareka D. Scott, and therefore, she remains a legal beneficiary of the estate."

### *Discussion*

Kenya raises nine issues on appeal, one of which requires reversal.

*A. The Trial Court Applied an Incorrect Legal Standard in Determining Whether the Statutory Requirements for Inheritance of Persons Born Out of Wedlock in an Intestate Proceeding had been Met*

Kenya argues that the trial court erred by ignoring the statutory requirements under section 732.108(2), Florida Statutes, for intestate succession for children born out of wedlock.  She maintains that the statute requires either a marriage ceremony, a judicial adjudication of paternity, or a written acknowledgment of paternity, none of which occurred here.

Scott answers that a certified birth certificate listing the decedent as the father is prima facie evidence of paternity and sufficient to establish heirship.  Relying upon sections 382.013(2) and 742.10, Florida Statutes (2025), she further argues that a voluntary acknowledgment of paternity, if not rescinded within 60 days, constitutes an establishment of paternity by operation of law and can be challenged only on the grounds of fraud, duress, or material mistake of fact.

For purposes of intestate succession, a person born out of wedlock is "a descendant of his or her father and is one of the natural kindred of all members of the father's family," if at least one of the following applies:

  (a) The natural parents participated in a marriage ceremony
       before or after the birth of the person born out of wedlock,
       even though the attempted marriage is void.

4

(b) The paternity of the father is established by an adjudication before or after the death of the father. Chapter 95 shall not apply in determining heirs in a probate proceeding under this paragraph.

(c) The paternity of the father is acknowledged in writing by the father.

§ 732.108(2), Fla. Stat. (2021).[2]

A decedent's written acknowledgment that he was the father of a child born out of wedlock does not merely create a rebuttable presumption of paternity—it settles the question of paternity for purposes of intestate succession pursuant to section 732.108(2). *Holmen v. Holmen by Rahn*, 697 So. 2d 866, 867 (Fla. 4th DCA 1997).

In interpreting a prior version of this statute, the Florida Supreme Court explained that a written acknowledgment "is sufficient if it directly, unequivocally and unquestionably acknowledges the paternity . . . in such terms and under such circumstances as may 'be construed as a formal acknowledgment of parenthood.'" *In re McCollum's Est.*, 88 So. 2d 537, 540 (Fla. 1956) (quoting *In re Horne's Est.*, 7 So. 2d 13, 16 (Fla. 1942)).

The mere appearance of a father's name on a birth certificate, absent his signature, is insufficient to qualify as a written acknowledgment of paternity under section 732.108(2)(c). *See White v. Marks*, 325 So. 3d 160, 164 (Fla. 5th DCA 2021). However, a birth certificate signed by the father constitutes a satisfactory written acknowledgment of paternity within the meaning of section 732.108(2)(c). *See Sanders ex rel. Wakefield v. Apfel*, 85 F. Supp. 2d 1275, 1280–81 (M.D. Fla. 1999) ("The Court concludes that Sanders did make satisfactory written acknowledgment within the meaning of [section 732.108(2)(c), Florida Statutes] by signing the birth certificate and identifying Timothy as his son in writing on the insurance application."); *but compare Fla. Dep't of Rev. ex rel. R.A.E. v. M.L.S.*, 756 So. 2d 125, 126 (Fla. 2d DCA 2000) (holding that putative father's signature on the back of the birth certificate did not have the effect of establishing paternity under Chapter 742).

The parties' briefs address sections 382.013 and 742.10 as they exist in the 2025 version of the Florida Statutes, but the current statutory scheme governing voluntary acknowledgments of paternity did not exist in

_____

[2] The 2021 statute was in effect when the decedent died.

January 1985, when Scott was born. Instead, the relevant statute in effect at Scott's birth provided that "[i]f the mother was not married at the time of either conception or birth, the name of the father shall not be entered on the certificate of birth without the written consent of the mother and the person to be named as the father, in which case, upon the request of both parents in writing, the surname of the child shall be that of the father." § 382.16(5)(c), Fla. Stat. (1984). And the 1984 version of Chapter 742 did not contain section 742.10's current language governing the legal effect of a Voluntary Acknowledgment of Paternity, which creates a rebuttable presumption of paternity. *Compare* § 742.10, Fla. Stat. (2025), *with* § 742.011–742.11, Fla. Stat. (1984).

The trial court's reasoning at the hearing was likely influenced by the current statutory scheme governing children born out of wedlock. Under the 2025 version (which again did not exist at the time of Scott's birth), "the name of the father may not be entered on the birth certificate without the execution of an affidavit signed by both the mother and the person to be named as the father." § 382.013(2)(c), Fla. Stat. (2025). If an adjudicatory proceeding was not held, a notarized voluntary acknowledgment of paternity creates a rebuttable presumption of paternity and is subject to the right of any signatory to rescind the acknowledgment within 60 days. § 742.10(1), Fla. Stat. (2025). After the 60-day period, "a signed voluntary acknowledgment of paternity shall constitute an establishment of paternity and may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger[.]" § 742.10(4), Fla. Stat. (2025).

Here, the trial court erred by ignoring the requirements of section 732.108 in determining that Scott qualified as an heir of the decedent. The court applied an incorrect legal standard. The court appeared to rule that paternity was "not an issue" because the father's name on the birth certificate was dispositive of paternity absent a criminal investigation into fraud by a law enforcement agency. But this was not the correct standard. The issue before the court was not whether it should "invalidate" or "rescind" the birth certificate.

Rather, the issue that should have been decided was whether Scott qualified as an heir under any of the methods set forth in section 732.108(2), Florida Statutes.

Scott submitted no evidence that her "natural parents participated in a marriage ceremony" so as to fall within section 732.108(2)(a). Scott also

presented no evidence that the decedent's paternity had previously been established by an adjudication so as to fall within section 732.108(2)(b).[3]

Scott could still qualify as an heir under section 732.108(2)(c) if the trial court were to find that the decedent acknowledged his paternity in writing by signing the birth certificate. If the decedent's signature on a birth certificate identifying him as the father of Scott was genuine, this signature would constitute a direct and unequivocal written acknowledgment of paternity within the meaning of section 732.108(2)(c).

Thus, the trial court must make a factual finding as to whether the decedent's signature on the birth certificate was forged. The decedent's use of the birth certificate to register Scott for school is evidence tending to support that he signed the birth certificate. At a retrial, the burden will be on Kenya to prove by a preponderance of the evidence that the decedent's signature on the birth certificate was forged. *See George Anderson Training & Consulting, Inc. v. Miller Bey Paralegal & Fin., LLC*, 313 So. 3d 214, 219 (Fla. 2d DCA 2021) (explaining that the burden of proof that a purported signature has been forged is by a preponderance of the evidence).

### B. Other Issues on Appeal

The trial court did not err in admitting the birth certificate in evidence. Kenya raised no objection to the admissibility of the birth certificate at trial, so she failed to preserve an objection to its admissibility. *See Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.").

Similarly, Kenya also failed to preserve any objection to the testimony of the school records custodian that the decedent submitted the birth certificate to register Scott for school in August 1990.

The remaining legal issues raised by Kenya were either unpreserved or without merit.

---

[3] To the extent Scott's petition to determine beneficiaries sought to establish paternity by an adjudication under section 732.108(2)(b) within the probate proceeding itself, Kenya's counsel correctly noted below that any such action would be barred by the statute of limitations. *See Rose*, 208 So. 3d at 139.

***Conclusion***

We reverse the order determining beneficiaries and remand for a new evidentiary hearing consistent with this opinion.

*Reversed and remanded.*

MAY and LEVINE, JJ., concur.

*     *     *

***Not final until disposition of timely-filed motion for rehearing.***